ELIZA B. ASH *vs.* ROBERT B. COLEMAN and FREDERICK
COLEMAN.

In all cases of doubt, such a construction should be given to a will as to make the minor and subordinate parts agree with the main design.

A testatrix devised certain real and leasehold property to the two children of her nephew Thomas Ash, viz: Mary E. Ash and Thomas F. Ash, their heirs and assigns; to have and to hold the same unto the said Mary E. and Thomas F. their heirs and assigns forever, to be equally divided between them, share and share alike. And in case of the death of either of them, then to the survivor of them and his or her heirs and assigns. And *in case* of the death of both of them before they should arrive at lawful age, then the testatrix gave and devised the property to her nephew, the said Thomas Ash, his heirs and assigns forever. The devisees survived the testatrix. Both attained the age of 21 years, and died, Mary E. Ash on the 14th of December, 1843, and Thomas F. Ash on the 12th of February, 1847. *Held,* that the intention of the testatrix was that the secondary devise should take effect, if at all, upon the termination of life at some referable, determinate period, viz: before her own decease, or under lawful age, and not indefinitely. And that, both devisees having survived the testatrix and attained the age of 21 years, each was entitled to an equal moiety of the estate devised. And that upon the death of the shortest liver, the whole estate did not go to the survivor.

CASE submitted for the opinion of the court, upon the construction of a will. The facts upon which the question arose are stated in the opinion of Justice STRONG.

*S. E. Lyon,* for the plaintiff.

*Wm. S. McCoun,* for the defendants.

*By the Court,* S. B. STRONG, P. J. This case has been submitted without action, pursuant to the 372d section of the code. It involves the construction of the will of Elizabeth Ash, which was made on the 22d day of November, 1822. The first and principal clause of the will is in the following words: "First. I give and devise unto the two children of my nephew Thomas Ash, to wit, Mary E. Ash and Thomas F. Ash, their heirs and assigns, all that messuage tenement and lot of ground with the appurtenances, situate, lying and being in the second ward of the city of New York, known by No. 125 Fly market,

and also all my right, title and interest of, in and unto the lease-hold lot of ground and premises situate in the said city, known and distinguished by lot No. 33 in John street. To have and to hold all and singular the premises and appurtenances above mentioned, unto them the said Mary E. Ash and Thomas F. Ash, their heirs and assigns forever, to be equally divided between them, share and share alike. And in case of the death of either of them, then to the survivor of them, and his or her heirs and assigns. And in case of the death of both of them before they arrive at lawful age, then it is my will, and I do give and devise all and singular the same unto my nephew, the said Thomas Ash, his heirs and assigns forever." The time of the death of the testatrix is not stated, but it was probably shortly after the date of her will. The devisees survived her. Both attained the age of 21 years, and died, the said Mary E. Ash on the 14th of December, 1843, and the said Thomas F. Ash on the 12th of February, 1847. · The plaintiff claims one half of the premises, under a title derived from Mary E. Ash, and the defendant Frederick Coleman claims the entirety under a title derived from Thomas F. Ash after he became the survivor of the two devisees. The defendant Robert B. Coleman is the sole executor of a will which forms the last link of the chain of the title claimed by Frederick Coleman, but he does not seem to have any interest in the controversy.

The main question arises upon the clause of the will which, in case of the death of either of the devisees, gives the whole to the survivor; whether the testatrix meant the death of the shorter liver at *any time,* or at some determinate period, which must have been before her own decease, or under lawful age. My opinion is, that the secondary devise was to take effect, if at all, upon the termination of life, at some referable time, and not indefinitely. In all cases of doubt, such a construction should be given to a will as to make the minor and subordinate parts agree with the main design. That is conformable to the ordinary rules of human action. The greater attention is always directed to the principal subject, and the main design is to secure its accomplishment. In this case the first wish of the

testatrix was to give to the two devisees each an *inheritable estate* in one half of the designated premises, as tenants in common. That is evinced in clear and appropriate terms. Now if the whole must necessarily devolve upon one, on the prior death of the other at any time, there would have been no inheritable estate in the shorter line. As to him or her, it would be but a life estate. There would be no possibility of a fee in both. It is undoubtedly true that a fee may be given to one determinable upon some contingency, but it must necessarily be upon a limitation which will not absolutely, and at all events, prevent the first taker from having an estate of inheritance. When such first taker may have a fee which may go over to another upon a contingency, there would be a substitution; but where there is at first nominally a devise or grant in fee, and a subsequent direction that it shall at all events be but a life estate, there is a positive contradiction. I do not mean by this that a fee may not be given to one, determinable on his dying before another, but it must be in terms which may confer a fee upon him in some event. Here, as I have already said, there was an evident intent to give a fee in one of the lots to *two*, and that could not be if one of them could never acquire any higher interest than a life estate. The testatrix refers to the prior death of one of the devisees, which she had in view as a contingent and not a certain event. She says that *in case* of the death of one of them, *then* she gives the property to the survivor. The word "then" evidently refers to the event itself, and not to the time of its occurrence. One of the interpretations given by lexicographers is "in that case." ( *Worcester's Dictionary, word "then.")* Now that one of two human beings will die before the other is so highly probable, that it is ordinarily assumed as a certainty. The testatrix evidently so considered it, in this case, as she, in the contingency to which she alluded, gave the property to the survivor. There is nothing to indicate that the testatrix could have any preference for the longer liver, nor any reason why she should disinherit one for the sake of the other, if both should arrive at a suitable age for the enjoyment and disposition of the property.

There is another reason which formerly induced the courts to decide that where property is given to two or more in fee, in severalty, and upon the death of either to the survivors, the death referred to must be within some definite period. If it referred to the decease of the shortest liver whenever it might occur, it would constitute a joint tenancy in effect, which would be inconsistent with the previously declared tenancy in common. Accordingly, in *Lord Bindon* v. *Earl of Suffolk,* where a testator bequeathed £20,000 to his five grandchildren, share and share alike, equally to be divided between them, and if any of them died, his share to go to the survivors and survivor of them, Lord Cowper held that by the first words it was very plain that the legatees were tenants in common, and by the subsequent words it must be intended if any of them should die in the lifetime of the testator. (1 *P. Wms.* 96.) The decision was reversed in the house of lords, but mainly on the ground that the fund, being a debt from the crown, was of such a desperate nature that the testator could not have acted upon the supposition of its present and positive existence. Mr. Jarman says that Lord Cowper's decision has since been repeatedly recognized. (2 *Jarm. Pow. on Dev.* 731.) In the recent case of *Smith* v. *Horlock,* (7 *Taunt.* 129,) a similar construction was given to a devise of real estate. So in *Rose dem. Vere* v. *Hill,* (3 *Bur. Rep.* 1881,) where the testator devised his lands to his wife for life, and after her decease to his five children, (naming them,) and the survivors and survivor of them, and the executors and administrators of such survivor, share and share alike, as tenants in common and not as joint tenants, Lord Mansfield and his associates held that these words were inserted to carry it to the survivors in case of the death of any of the devisees in the devisor's lifetime, and that they took as tenants in common. A similar decision was made in the house of lords in *Wilson* v. *Bayly,* (3 *Br. Parl. Cas. Toml. ed.* 195,) and by the court of common pleas in *Garland* v. *Thomas,* (1 *Bos. & Pul.* 82,) and in *Edwards* v. *Symonds,* (6 *Taunt.* 213.) I think the rule to be well established, and still existing, notwithstanding some doubts as to the principle

The People *v.* Stryker.

upon which it is based, in later cases. I do not contend for its applicability to cases where there are circumstances mentioned or referred to in the will indicating a more remote period. In this case, the devise over upon the death of those named in the primary gift, under age, may indicate that the survivor might have taken the whole upon the death of the other, whether it preceded or followed the demise of the testator. But if so, the inference would not extend the required survivorship beyond the minority of the longest liver; certainly not indefinitely, so as to create incompatibility with the principal estate.

The principle upon which I am inclined to decide this case is, that the survivor could not take the whole except upon the death of the other devisee within some determinate period, and that there are no indications of any intent that such period should extend beyond the attainment of the majority of the younger.

The judgment should be that the plaintiff Eliza B. Ash is entitled to the equal undivided half of the premises in dispute, the lot in Fly market, in fee simple absolute, and the other during the continuance of the lease, and if necessary, that she should recover the same.

· [ORANGE GENERAL TERM, July 14, 1857. · *S. B. Strong, Birdseye* and *Emott,* Justices.]